FILED
SUPERIOR COURT
OF GUAM

2022 APR -1 PM 3: 56

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, | CRIMINAL CASE NO. **CF0143-21** |
| vs. | **DECISION AND ORDER** |
| **BENNY JOSHUA SALAS NAUTA aka Benny Joshua Salas Nauta, Jr.,** | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on November 10 and 17, 2021, for hearing on Defendant **BENNY JOSHUA SALAS NAUTA aka Benny Joshua Salas Nauta, Jr.'s** ("Defendant") Motion to Suppress All Evidence and Suppress Involuntary Confession. Present were Assistant Attorney General Sean Brown on behalf of the People of Guam ("the Government") and Defendant with counsel, Assistant Public Defender Alisha Molyenux. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On March 23, 2021, Defendant was indicted with the following charges: (1) Possession of a Firearm without a Firearm Identification Card (As a Third Degree Felony); (2) Possession of an Unregistered Firearm (As a Third Degree Felony); and (3) Possession of a Schedule II Controlled Substance (As a Third Degree Felony) – 2 Counts. (Indictment, Mar. 23, 2021). These charges stem from the discovery of a revolver, ammunition and improvised glass pipe

with suspected methamphetamine during a traffic stop in Dededo on January 2, 2020, as well as the discovery of a glass pipe with suspected methamphetamine on Defendant's person during a pat down search on March 15, 2021. (Decl. of Brendlynn O. Joseph, Magistrate's Compl., Mar. 16, 2021).

On September 17, 2021, Defendant filed a Motion to Suppress All Evidence and Suppress Involuntary Confession ("Motion to Suppress"). On September 23, 2021, the Government filed its Opposition.

On November 10, 2021, the Court heard sworn testimony from Guam Police Department Officers Christopher Champion, Craig Peter Calvo, Benjamin Cruz, Joseph Gumataotao, Ricky Camacho, and Defendant's father Benny Nauta. On November 17, 2021, the Court heard sworn testimony from Defendant. The Court then gave the parties leave to file proposed findings of fact and conclusions of law. On December 3, 2021, the Government filed its Proposed Findings of Fact and Conclusions of Law, and on January 4, 2022, Defendant filed his Proposed Findings of Fact and Conclusions of Law. The Court subsequently placed the matter under advisement.

At the Suppression Hearing, witnesses testified to the following:

**January 2020 Traffic Stop**

1. On or about January 2, 2020, Officer Benjamin Cruz effectuated a traffic stop after observing a vehicle with a defective license plate light and an expired vehicle registration decal. Officer Cruz was familiar with Defendant, but did not know he was the driver of the vehicle until he approached. Officer Cruz observed another adult passenger and four children in the front seat of the single cab pickup truck.

2. Officer Cruz requested for Defendant's license and car registration. Defendant did not have a driver's license.

3. Defendant appeared to be fidgeting underneath the driver's chair. Officer Cruz testified that it appeared Defendant was making furtive movements to hide something under his seat, like a weapon or illegal substances. Officer Cruz asked Defendant to step out of the vehicle and conducted a pat-down search for weapons.

4. Officer Cruz did not find any weapons on Defendant's person.

5. Officer Cruz asked Defendant if there were any illegal drugs or weapons in the vehicle. Defendant responded no.

6. Officer Cruz asked Defendant if he could search the vehicle, to which Defendant responded no.

7. Officer Cruz did not allow Defendant to leave the scene and asked him to call for a ride because the vehicle registration was expired, the vehicle did not have any insurance, and there were children in the vehicle without any child restraint seats.

8. Officer Christopher Champion appeared on the scene and spoke with Defendant. Officer Cruz did not hear what they spoke about, but indicated that Defendant consented to a search after his conversation with Officer Champion. Officer Cruz testified that Defendant told him and Officer Champion that he had some drugs and a weapon in the vehicle. Officer Cruz could not recall exactly what Defendant said to consent to search the vehicle, but indicated that he said something along the lines of "he's going to go to jail for what's in the car," "it's not because of the drugs," and "he has a gun under the driver's seat." Officer Cruz acknowledged that he did not include Defendant's statement that "he's going to go to jail" in his police report.

9. Officer Champion testified he arrived at the scene to assist after hearing Officer Cruz radio in that he conducted a traffic stop. Officer Cruz was talking with Defendant when Officer Champion arrived. Officer Champion testified that Defendant initially said no and did not give consent to search the truck. Officer Champion testified that as Officer Cruz further spoke with Defendant, he was displaying indicators leading him to believe Defendant was nervous about something in the vehicle. Officer Champion testified that eventually Officer Cruz was able to ascertain that there was a firearm in the car which is what Defendant was concerned about, and Officer Cruz obtained consent to retrieve the firearm. The vehicle was searched and a weapon and suspected methamphetamine were discovered.

10. Officer Gumataotao confiscated the items. Officer Gumataotao testified he confiscated a pouch with two glass pipes, a zip lock bag containing a white substance, a firearm and ammunition. Officer Gumataotao testified he also confiscated a license plate. Officer Gumataotao testified he was not present for any conversation regarding consent to search and that he had no contact with the operator of the vehicle.

11. Officer Gumataotao testified that when he packaged the firearm, he attached a tracing form, and submitted it.

12. Defendant's parents arrived at the scene. Officer Cruz did not speak to the parents, but recalled that Defendant's mother was screaming.

13. Officer Cruz testified that if Defendant and his family were picked up by his parents or anyone else, the vehicle would have remained on the side of the road, after being secured by GPD. Officer Cruz testified that he would not have looked inside the vehicle without consent, even in that situation.

14. Officer Cruz did not hear Officer Champion tell Defendant's parents that he would be booked and released that night.

15. Officer Champion testified that he told Defendant's parents that Defendant was going to be brought to the precinct for questioning; that if Defendant got arrested, barring any warrants for his arrest, that he would likely be booked and released.

16. Officer Champion acknowledged that none of his interactions with Defendant at the scene of the traffic stop were included in his report. Officer Champion also acknowledged that he did not include the conversations he had with Defendant's parents in his report either.

17. Officer Cruz believed Defendant was arrested that night for the firearms and possession of a schedule II controlled substance. Officer Cruz did not know when Defendant was brought before a Magistrate Judge for the charges.

18. Officer Cruz testified that in a firearms investigation, officers request for the person in possession of a firearm to produce a firearms ID. If the person does not have one,

the weapon is confiscated, an ATF form is filled out and attached to the report, the officer will try to find the owner is through the system and then forward to detectives to follow up. Officer Cruz testified that ATF is always involved.

19. Officer Cruz testified that his involvement stopped at the traffic stop. Officer Cruz was unaware of any promises that Officer Champion or any other officer may have made to Defendant.

20. Officer Champion could not recall if Defendant was in handcuffs when they left the scene, but indicated that since Defendant was transported to the Dededo Precinct in a police vehicle, it was likely he was in handcuffs.

21. Officer Champion interviewed Defendant regarding the firearm and suspected methamphetamine at the Dededo Precinct.

22. Officer Champion testified he advised Defendant of his *Miranda* rights using a custodial interrogation form. Officer Champion testified that Defendant understood his rights and that he initialed his name next to each right and signed a written waiver. Defendant made statements orally and then provided a written statement.

23. Officer Champion testified that Defendant expressed a willingness to speak with investigators from special investigations but was not promised anything. Officer Champion testified that he did not promise Defendant anything.

24. Detective Camacho testified he was also activated by his supervisor in 2020 to speak with Defendant. Detective Camacho testified that during his encounter with Defendant in 2020, no promises were made to Defendant that if he cooperated with police he would not be charged by the Office of the Attorney General in connection to the firearm or narcotics.

25. Detective Camacho testified that during his interview with Defendant in 2020, Defendant identified known drug traffickers that he had purchased meth from, and told them how long he had been using meth for. Defendant agreed to talk to the detectives at a later time to assist further with drug trafficking, however, Detective Camacho testified that he was not able to get ahold of Defendant. Detective

Camacho testified that he tried to contact Defendant a week after their first encounter and then sporadically for the months following. Detective Camacho testified he also tried calling Defendant's girlfriend. Detective Camacho testified that Defendant was also given his contact information to be able to contact him as well if he wanted to assist law enforcement, but Defendant never called.

26. Detective Camacho testified Officer Champion was not present during this interview. Detective Camacho testified that only he and Detective Manglona were present for the interview.

27. Detective Camacho was not present during Officer Champion's interview with Defendant.

28. Defendant testified that his hands were on the steering wheel and that he did not recall fidgeting, as testified by Officer Cruz.

29. Defendant testified that Officer Cruz first asked for his license and registration. Defendant testified that he gave Officer Cruz his registration but stated he had no license. Defendant testified Officer Cruz walked back to his patrol vehicle and then came back and asked him to exit the vehicle. Defendant complied.

30. Officer Cruz patted Defendant down and asked him for consent to search the vehicle. Defendant said no.

31. Defendant testified that Officer Cruz placed him in handcuffs after he completed the pat down and Defendant had denied the search request.

32. Defendant testified that he and Officer Cruz then waited for at least an hour and then Officer Champion arrived. Officer Cruz did not tell Defendant why they were waiting. Defendant did not hear Officer Champion mentioned by name while they were waiting, and noted that he was the last officer to arrive. Defendant testified that this was the first time he met Officer Champion.

33. Defendant testified that Officer Champion asked him to search his vehicle, to which Defendant again responded no. Defendant testified that after Officer Champion asked Defendant the second time, he told him that if he let him search the vehicle

that he would not be arrested, that he would be able to be picked up and go home. Defendant testified that was why he agreed to let Officer Champion search the vehicle. Defendant testified that he was hesitant at first because he did not want to agree, but said yes after Officer Champion said "you just got to trust me." Defendant testified that Officer Champion asked him three to four times to search the vehicle.

34. Defendant testified he was standing near the back of the truck while Officer Cruz and Officer Champion searched the vehicle. Officer Cruz and Officer Champion discovered Defendant's gun and pouch in the vehicle. After finding the gun, Officer Champion asked Defendant if he had any drugs. Defendant responded no. The pouch was searched and a glass pipe and some baggies were found inside. Defendant was then placed in the backseat of the patrol vehicle. Defendant later saw his parents arrive, his kids go into their car, and his father speak with Officer Champion.

**March 2021 Arrest**

35. Detective Camacho testified that that in March 2021, he conducted a follow up investigation with Detective Calvo, Detective Manglona, and Detective Kim regarding an open confiscated firearms case, with Defendant as the suspect. Detective Camacho could not give a specific reason as to why it took more than a year. Detective Camacho testified there were a lot of open cases that need follow up that they get to when they have time. Detective Camacho also testified that Defendant moved a few times, and that this was not the first time they made attempts to look for him.

36. Detective Camacho testified they first went to Defendant's last known address, met with a relative who told them that he did not reside there anymore, and gave them a contact number for Defendant's dad, Benny Nauta Sr. Detective Camacho made contact with Mr. Nauta who gave him a contact number for Defendant's girlfriend, Kayleen Cruz, who gave them directions to their current residence in Dededo.

37. The detectives went to Defendant's residence and asked Ms. Cruz to call Defendant outside. Defendant came out of the residence and was advised that he had an open case and that he had an active warrant. Defendant was arrested for possessing a firearm without a firearms identification card and for the active warrant.

38. Defendant was searched and a modified glass pipe was located in his pants pocket. Detective Camacho testified that Defendant had to be searched because he was going to be processed at Department of Corrections and because to ensure that he did not have any weapons for officer safety. Defendant was also arrested for possession of an illegal controlled substance.

## DISCUSSION

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). Defendant moves the Court to suppress all evidence seized and statements made by Defendant in this matter. *See generally*, Mot. Suppress, Sep. 17, 2021; Deft. Proposed FFCL, Jan. 4, 2022.

### A. SEARCH OF VEHICLE – JANUARY 2, 2020

Defendant first moves the Court to suppress evidence seized from the search of his truck. (Deft. Proposed FFCL at 5-8). The Government opposes, arguing that Defendant voluntarily consented to the search. (Gov't Proposed FFCL at 3-6). "A search or seizure made without a warrant is presumed to be unreasonable. In the absence of a warrant, the police may lawfully conduct a search or seizure only if an exception to the warrant requirement applies. Voluntary consent is a recognized exception to the warrant requirement." *Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). At the Suppression Hearing, both Officer Cruz and Officer Champion testified that Defendant gave consent to search the vehicle. Therefore, the Court must examine, based on the totality of the circumstances, whether Defendant's consent was voluntary. *See id.* at ¶ 25. The Court examines the following factors:

1) whether the defendant was detained and the length of time of the questioning;
2) whether the defendant was threatened or intimidated by the police; 3) whether

the defendant relied on misrepresentations or promises made by the police; 4) whether the defendant was in custody or under arrest when the consent was given; 5) whether the defendant was in a public or secluded place; and 6) whether the defendant objected to the search.

*Id.* (citation omitted). The Government has the burden to prove by a preponderance of evidence whether Defendant's consent was voluntary. *Id.*

Here, Officer Cruz and Officer Champion both requested to search Defendant's truck after a traffic stop was effectuated by Officer Cruz. The traffic stop was effectuated in public, on the side of the road. The Court acknowledges that although Defendant was "detained" for purposes of the traffic stop, this alone does not automatically render any consent involuntary, *see United States v. SotoCir.* 988 F.2d 1548, 1577-58 (10th Cir. 1993) ("Valid consent may be given by a person being detained"). The Court, however, is unable to ascertain whether Defendant actually gave informed and voluntary consent to a search of his vehicle. Both Officer Cruz and Officer Champion testified that Defendant objected at first to the request to search the truck. The Officers, however, gave conflicting testimony as to how Defendant subsequently changed his mind and consented to a search of the truck. Officer Cruz testified that Defendant did not change his mind until he spoke with Officer Champion, and Officer Champion testified that Defendant changed his mind after further speaking with Officer Cruz. Defendant also testified that he objected to the search and only consented after Officer Champion promised him that he would not get in trouble or arrested if he consented to the search. Not only does Defendant's testimony conflict with the officers, but the officers' testimonies conflict with each other. Accordingly, the Government has not proven voluntary consent by a preponderance of the evidence and any evidence seized from Defendant's truck must be suppressed.

## B. STATEMENTS MADE TO POLICE – JANUARY 2, 2020

Defendant next moves the Court to suppress statements made to the police at the precinct under the fruit of the poisonous tree doctrine, *see Wong Sun v. United States*, 371 U.S. 471 (1963) and because the statements were not voluntarily given.

"Before evidence may be suppressed under [the fruit of the poisonous tree] doctrine, the court must initially resolve whether the challenged evidence was come at by the exploitation of the initial illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *People v. Cundiff*, 2006 Guam 12 ¶ 41 (quoting *Segura v. United States*, 468 U.S. 796, 804-05 (1984)). Thus, the Court looks to whether any independent evidence was presented that would "break the causal connection" between the illegal search of Defendant's vehicle and subsequent statements obtained at the police precinct. *See, Oregon v. Elstad*, 470 U.S. 298, 306 (1985) ("It is settled law that a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint.").

In this case, Defendant was transported in a police vehicle from the scene of the traffic stop to the police precinct. Officer Champion could not specifically recall whether or not Defendant was handcuffed at the scene, but indicated that it was likely that he was because he was transported to the precinct in a patrol car. Officer Champion advised Defendant of his *Miranda* rights and interviewed him regarding the firearm and suspected methamphetamine. There is nothing in the record before the Court to indicate that there was any intervening event to break the causal connection between the illegal search and the subsequent statements given. Accordingly, the Court finds that any statements made by Defendant at the station must also be suppressed. In light of this finding, it is unnecessary for the Court to reach the issue of whether Defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights prior to making any statements.

## C. SEARCH OF DEFENDANT'S PERSON – MARCH 15, 2021

Lastly, Defendant moves the Court to suppress evidence seized from his person in March 2021. Defendant argues that his arrest and subsequent search incident to arrest on March 15, 2021 were illegal because they "resulted from the illegal search and involuntary oral and written statements" and must be "suppressed as fruits of the poisonous tree." (Deft. Proposed FFCL at 12). "Before evidence may be suppressed under [the fruit of the poisonous tree]

doctrine, the court must initially resolve whether the challenged evidence was come at by the exploitation of the initial illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *People v. Cundiff*, 2006 Guam 12 ¶ 41. At the suppression hearing, Detective Camacho testified that Defendant was arrested for possessing a firearm without a firearms identification and for an active warrant. Because Defendant had an outstanding warrant of arrest in another matter, the Court finds that any items discovered during the search incident to his arrest came by means sufficiently distinguishable, and therefore DENIES the Motion to Suppress as to any items seized from Defendant's person on March 15, 2021.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Suppress. The Court will suppress evidence obtained from Defendant's truck and statements made to police on January 2, 2020. The Court will not suppress evidence seized from Defendant's person on March 15, 2021. Parties shall return for a Status Hearing on **APRIL 21, 2022** at **9:00 AM** via Zoom.

**IT IS SO ORDERED** this 1st day of April, 2022.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam